IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| 526 MURFREESBORO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. _____ |
| | ) |
| PRIME CAPITAL VENTURES, LLC, | ) JURY DEMAND |
| | ) |
| Defendant. | ) |

## PLAINTIFFS' VERIFIED COMPLAINT

### I. SUMMARY

1. This is a lawsuit against a lender who entered into a legally binding Line of Credit ("LOC") Agreement with Plaintiff with the intention never to fund the loan, but instead to obtain from Plaintiff a hefty interest credit deposit which Defendant has failed to return despite demand.

2. Defendant defaulted on the LOC Agreement by failing to fund the first advance of the loan, and then failed to return Plaintiff's Interest Credit Account deposit (the "ICA deposit") in the amount of $4,312,500.00.

3. Plaintiff has learned of at least five other similarly situated individuals or entities who have been fraudulently induced into entering a similar LOC Agreement with Defendant. Like Plaintiff, these victims advanced a sum in the millions of dollars to Defendant as a purported ICA deposit. Defendant never funded these loans, and Defendant did not return the ICA deposit or did so only when threatened with legal action.

4. Accordingly, to obtain return of its ICA Deposit, to obtain damages, and to prevent Defendant from engaging in a similar fraud against other borrowers, Plaintiff brings this action.

## II. PARTIES

5. Plaintiff 526 Murfreesboro, LLC ("Plaintiff" or "526 Murfreesboro") is a limited liability company organized and existing under the laws of the State of Delaware, with its address at 526 Murfreesboro Pike, Nashville, Tennessee 37210.

6. Defendant Prime Capital Ventures, LLC ("Defendant" or "Prime Capital") is a Delaware entity that is not registered to perform business in Tennessee. Prime Capital may be served with process at its principal place of business at 66 South Pearl St., Albany, New York, 12207, or through its registered agent The Corporation Trust Company located at Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801.

## III. JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's Racketeer Influenced and Corrupt Organizations ("RICO") Act claim arises "under the Constitution, laws, or treaties of the United States."

8. This Court has supplemental jurisdiction over the state law claims of breach of contract and fraud, under 28 U.S.C. § 1367 because these two claims "are so related to [the RICO] claim[] in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."

9. Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims alleged in this Complaint occurred in this judicial district. Without limitation, Plaintiff entered into the LOC Agreement so that it could purchase and remodel real property in this District.

10. Venue is also proper pursuant to 18 U.S.C. § 1965(a) because defendant "transacts affairs" in this judicial district.

11. Defendant is subject to specific jurisdiction in Tennessee because Plaintiff's claims arise out of or relate to Defendant's contacts with Tennessee, and Defendant has reached into the State of Tennessee to conduct business herein thus purposefully availing itself of the privileges of conducting activities within Tennessee.

## IV. FACTS

12. Plaintiff 526 Murfreesboro, LLC is a limited liability company that is engaged in the development of real estate properties in Nashville, Tennessee.

13. Plaintiff was under contract to purchase a 78-unit motel located at 526 Murfreesboro Pike, Nashville, TN 37210 (the "Property"). The Property sits on a 2.8 acre lot. In addition to the motel, the Property consists of an on-site 4 bedroom house and a 3-bedroom apartment. The structures were built in 1962, and required major renovations.

14. On April 6, 2023, 526 Murfreesboro, as borrower, and Prime Capital, as lender, entered into a Development Line of Credit Agreement (the "LOC Agreement") to provide funds for the purchase, renovation, and development of the Property.[1]

15. A true and correct copy of the LOC Agreement is attached as Exhibit A.

16. The LOC Agreement specified that Plaintiff was seeking a loan to purchase, renovate, and develop the Property. The loan amount for these purposes was $17,250,000.00.

17. The LOC Agreement states in relevant part as follows:

> Within twenty-four (24) hours after the fully executed Loan Documents are received by Lender and Borrower, Borrower has agreed to pay to Lender, pursuant to Section 3.6 hereof, the aggregate amount of FOUR MILLION THREE HUNDRED TWELVE THOUSAND FIVE HUNDRED and 00/100 Dollars ($4,312,500.00) (the "ICA Payment"), by bank wire to Lender. An account on the books and records of Lender shall be created to serve as an Interest Credit Account (the "ICA"). A credit equal to the ICA Payment shall be noted in the ICA for purposes of satisfying interest payments under the Loan.

> Subject to the terms and provisions of this Agreement and the Promissory Note, Lender has agreed to make Advances from the LOC to Borrower in an aggregate amount not to exceed the Maximum Amount for the purposes set forth in these recitals and in the Promissory Note (as hereinafter defined) and upon the terms and subject to the conditions hereinafter set forth.

18. The LOC Agreement contained one, and only one, Lender warranty:

> Lender hereby represents and warrants to Borrower that it has the financial ability and wherewithal to fund the LOC in the full amount of the Maximum Amount.[2]

---

[1] *See* Ex. A – Development Line of Credit Agreement (dated April 6, 2023).
[2] *See* Ex. A, Section. 10.12 Lender's Ability to Fund.

19. The LOC's Article 13.7, dealing with events of default by the Lender, provides that:

> [I]f Lender fails to fund the first Advance in accordance with the terms and conditions of this Agreement and the Promissory Note, Borrower shall have the option to terminate this Agreement and request a full refund of the ICA Payment. Upon the occurrence of such default, Borrower shall deliver written notice in the form of a notarized termination letter, a copy of which is attached hereto as Exhibit F (the "Termination Letter"), to Lender by certified mail. Upon receipt of such notice, Lender shall have thirty (30) international business-banking days from the date of receipt ("Refund Period") within which to return the ICA Payment to Borrower.[3]

20. Prime Capital failed to fund the first advance to Plaintiff.

21. On May 16, 2023 Prime Capital informed Plaintiff of a material change in its process of securing the loan funds.[4] Defendant explained that it switched insurers from Lloyd's of London to an undisclosed insurer roughly 7-10 days after Plaintiff made the ICA deposit into Defendant's bank account. Defendant therefore delayed five weeks before notifying Plaintiff of this material change in the insurer underwriting the loan.

22. On May 18, 2023[5] and May 22, 2023[6] Prime Capital confirmed to Plaintiff that it would provide the cash advance of $500,000.00 required for an extension for a later closing date caused by Prime Capital's delay in advancing the first installment under the LOC Agreement.

---

[3] *See* Ex. A, Section. 13.7(a) Default by Lender and Borrower's Sole Remedy.
[4] *See* Ex. B - Email from Scott Diberardinis to Dan Cosgrove on May 16, 2023.
[5] *See* Ex. C - Email from K. Humphrey, May 18, 2023.
[6] *See* Ex. D - Email from S. Diberardinis, May 22, 2023.

23. In reasonable reliance upon such representation, Plaintiff paid the $500,000.00 and continued to incur pursuit costs.

24. Prime Capital never reimbursed Plaintiff the $500,000.00 cash advance.

25. On June 28, 2023 Prime Capital sent Plaintiff a text message stating it has "done nothing wrong *thus far*."[7] "Thus far" referred to the fact that the LOC Agreement allowed a 90-day cure period for an alleged breach.

26. Prime Capital defaulted on the LOC Agreement on August 11, 2023.

27. As a result of such default, Plaintiff has incurred fines, penalties, interest and other consequential damages in the amount of at least $17,870,421.36.

28. On September 29, 2023, Plaintiff executed the Termination Letter[8] – as required by the LOC Agreement – and sent it to Prime Capital, terminating the LOC Agreement and requesting the return of the ICA deposit within 30 "international business banking days."

29. Thirty international business banking days from September 29th, 2023 was November 10, 2023. Therefore, on November 10, 2023, Prime Capital was obligated to return the $4,312,500.00 ICA deposit to Plaintiff.

30. On November 10, 2023, Plaintiff's counsel emailed Defendant's counsel requesting a confirmation that the funds would be transferred, and providing the bank account information of Plaintiff's account to facilitate this transfer.

---

[7] *See* Ex E - Text message from K. Humphrey to D. Cosgrove on June 28, 2023 (emphasis added).
[8] *See* Ex. F – Executed Termination Letter.

31. In response, Defendant replied, stating: "To All, The client's termination was received on 9/29. 30 banking days is Tuesday, Nov 14th. Not today. Close, but it is on Tuesday."[9]

32. Thus, even under Defendant's calculation (which Plaintiff disputes) the ICA deposit return was due by November 14, 2023.

33. To date, Defendant has failed to refund the ICA deposit.

34. As a result of Prime Capital failing to fund the loan or return the ICA deposit to Plaintiff, Plaintiff has suffered consequential damages resulting from Plaintiff leveraging a short term private loan to produce the funds necessary for the ICA deposit.

35. Plaintiff has been incurring a penalty of $1,000.00 per day in interest alone on said private loan.

36. To date, as a result of Prime Capital's failure to fund the loan, or return the ICA deposit, Plaintiff has been incurring debts and penalties totaling $17,870,421.00. Such consequential damages include pursuit costs for architecture, surveys, designs, engineering, permitting, legal fees, and passive investor capital raise agreements.

37. Such amount increases each day that the funds used for the ICA deposit are not returned to Plaintiff.

---

[9] *See* Ex. G – Email from K. Humphrey, Nov. 10, 2023.

# V. CAUSES OF ACTION

## A. Violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C § 1961, *et seq.*

38. The foregoing allegations are hereby incorporated by reference.

39. Defendant's sole purpose as a purported "lender" is to defraud prospective borrowers by engaging in a scheme to unlawfully enrich itself by fraudulently inducing borrowers to pay millions of dollars into Defendant's bank account as a purported deposit against the interest that would accrue on a high-interest loan.

40. Defendant enters into Line of Credit Agreements with prospective borrowers, with no intention of ever funding the loans it contractually commits to fund.

41. Each Agreement contains a clause, that, upon information and belief, is nearly identical to the clause contained in Plaintiff's LOC Agreement.

42. Such clause states that the first advancement of the loan is conditioned on borrower paying a large ICA deposit; borrower does so, in good-faith, as a condition-precedent of funding.

43. Defendant then systematically defaults on the loan, while holding the ICA deposit hostage.

44. When notified of Defendant's default, Defendant cites the 90-day cure period in order to buy more time from the borrower.

45. At the end of the cure-period, Defendant has invariably not cured its default.

46. Borrower thus sends a Notice of Default, as required by the LOC Agreement.

47. Borrower must then wait an additional 30 days from the date of receipt of the Termination Notice before Defendant is legally obligated to return the ICA deposit.

48. At the end of this 30 days, the ICA deposit, is still not returned to borrower.

49. Borrower is then forced to seek legal recourse, if it have the resources to do so, to force Defendant to return the unlawfully obtained and detained funds.

50. Meanwhile, borrower has incurred vast damages due to Defendant's defaults under the LOC Agreement, and such debts and penalties continue to accrue during the duration of the cure-period and the 30 day wait-period from the date of receipt of the Notice of Termination.

51. Prime Capital committed wire fraud by using the electronic mail and the internet to communicate with Plaintiff and other borrowers regarding the fraudulent scheme to unlawfully obtain money from them.

52. Prime Capital committed wire fraud when it required and received funds into its bank accounts via wire transfers from Plaintiff's, and other borrowers', bank accounts.

53. Upon information and belief, Prime Capital committed at least six known acts of racketeering activity within the past two years.[10]

54. Upon information and belief, Defendant does not hold the ICA deposits in an escrow account or otherwise safeguard these funds.

---

[10] *See, e.g.*, *The Lion Group DFW, LLC v. Prime Capital Ventures, LLC*, 23-DCV-341617 (Bells County, TX); *Camshaft CRE 1 LLC v. Prime Capital Ventures, LLC* (Miami-Dade County, FL).

55. Upon information and belief, Defendant expends the ICA deposit funds to pay debts to other borrowers similarly situated to the new borrower, but before the new borrower in line.

56. Defendant also trades on the assets under its management to prop up its value and leverage such value to attract more unsuspecting borrowers through its fraudulent practices.

57. As a result of these actions, Plaintiff has suffered damage as described herein and in an amount to be proven at trial.

B. **COUNT II – BREACH OF CONTRACT**

58. The foregoing allegations are hereby incorporated by reference.

59. The LOC Agreement is a valid contract between 526 Murfreesboro, LLC and Prime Capital Ventures, LLC.

60. Plaintiff performed its contractual obligations under the LOC Agreement.

61. Defendant's failure to fund the first advance under the LOC Agreement to Plaintiff was a defaulting event and constitutes a material breach of the LOC Agreement.

62. Plaintiff properly notified Defendant of its breach and waited well-over the cure period as specified in the LOC Agreement.[11]

63. Defendant has never denied that it breached the LOC Agreement.

---

[11] *See* Ex. H - Email from D. Cosgrove to Prime Commercial Lending, August 11, 2023.

64. In fact, Defendant has implicitly admitted that Defendant is in breach when a representative of Defendant wrote to Plaintiff that Plaintiff's "money is not being held hostage and can be returned at any time."[12]

65. Plaintiff properly notified Defendant of its right to exercise termination under the LOC Agreement pursuant to Defendant's breach and failure to cure.

66. Plaintiff executed and sent the Termination Notice to Defendant on September 29, 2023.

67. Per the terms of the LOC Agreement, Defendant was required to return Plaintiff's ICA deposit within "30 international business banking days."

68. Those 30 days have come and gone, and Defendant has still not returned the $4,312,500.00 ICA deposit to Plaintiff.

69. Defendant wrongfully refuses to return Plaintiff's ICA deposit.

70. Plaintiff has sustained injury and incurred damages in the amount not less than $4,312,500.00 plus other damages which continue to accrue, including, without limitation, $17,870,421.00 in consequential damages.

C. **COUNT III – FRAUD IN THE INDUCEMENT**

71. The foregoing allegations are hereby incorporated by reference.

---

[12] *See* Ex. I – Email from K. Rogileri to D. Cosgrove, August 23, 2023.

72. In the Line of Credit Agreement, Prime Capital represented the following: "Lender hereby represents and warrants to Borrower that it has the financial ability and wherewithal to fund the LOC in the full amount of the Maximum Amount."[13]

73. However, Prime Capital knew that it didn't have the funds available to fund the loan to Plaintiff.

74. Prime Capital's ability to fund the loan was a material term of the LOC Agreement.

75. Plaintiff relied upon Defendant's representation that Defendant could fund the loan in entering into the LOC Agreement.

76. Defendant has defrauded Plaintiff by knowingly hiding material information from, and making material misrepresentations, to Plaintiff.

77. Defendant never intended to fund the loan to Plaintiff. Rather, Defendant knowingly and directly entered into the LOC Agreement with Plaintiff with the intent to receive the ICA deposit from Plaintiff.

78. Defendant knowingly held itself out as a reputable lender, and entered into a legally binding LOC Agreement with Plaintiff for the sole purpose of obtaining the ICA deposit from Plaintiff, with no intention of funding Plaintiff's loan.

79. Plaintiff reasonably relied upon Defendant's material misrepresentations and omissions and has been harmed thereby.

---

[13] *See* Ex. A, Section. 10.12 Lender's Ability to Fund.

80. Plaintiff seeks the return of the ICA Payment for the dissolution of the Credit Line Agreement, plus other damages which continue to accrue.

81. Plaintiff seeks punitive damages for Defendant's intentional, egregious, and reprehensible fraudulent acts, pursuant to, inter alia, Tenn. Code Ann. § 29-39-104.

## VI. JURY DEMAND

82. Plaintiff hereby demands a trial by jury for all claims so triable.

## VII. PRAYER FOR RELIEF

83. Plaintiff respectfully requests that this Court enter judgment in Plaintiff's favor, granting the following relief against Defendant:

a) a Temporary Restraining Order and a Preliminary Injunction enjoining Defendant from lending or utilizing any of the ICA deposit funds or other funds, until Plaintiff has been made whole;

b) entering judgment ordering Defendant to return Plaintiff's wrongfully detained ICA deposit;

c) entering judgment in Plaintiff's favor that Defendant has breached the Line of Credit Agreement, has committed fraud in the inducement, and has violated the RICO Act causing significant harm to Plaintiff in an amount to be proved at trial;

d) entering judgment in Plaintiff's favor and awarding full damages to Plaintiff caused by Defendant's unlawful conduct in an amount to be determined at trial, plus other damages which continue to accrue factoring in all interest,

costs and expenses, and such award shall be trebled pursuant to 18 U.S.C. § 1964(c);

e) an appropriate award of exemplary or punitive damages against Defendant on account of Defendant's reprehensible conduct pursuant to, inter alia, 18 U.S. Code § 1964(a);

f) awarding Plaintiff its reasonable attorneys' fees and costs incurred in bringing and having to pursue this action pursuant to, inter alia, 18 U.S.C. § 1964(c);

g) and such other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Michael G. Abelow*
Michael G. Abelow (BPR #26710)
Frances W. Perkins (BPR #40534)
SHERRARD, ROE, VOIGT & HARBISON, PLC
150 Third Ave South, Suite 1100
Nashville, TN 37201
(615) 742-4532 - telephone
(615) 742-4539 - fax
mabelow@srvhlaw.com
fperkins@srvhlaw.com

*Attorneys for Plaintiff 526 Murfreesboro, LLC*

## VERIFICATION

I, Daniel Cosgrove, declare under penalty of perjury that I am a member of 526 Murfreesboro Management, LLC (which is the sole member of 526 Murfreesboro, LLC), and that the facts stated in the Complaint are true and correct.

526 Murfreesboro, LLC

By: _____
526 Murfreesboro Management, LLC, by Daniel Cosgrove, a Member