IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| 526 Murfreesboro, LLC, | ) |
| | ) Case No. 3:23-cv-01239 |
|     Plaintiff, | ) |
| | ) Judge Campbell |
| v. | ) Magistrate Judge Frensley |
| | ) |
| Prime Capital Ventures, LLC, | ) Jury Demand |
| | ) |
| | ) |
|     Defendant. | ) |

## MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Fed. R. Civ. P. 65 and Local Rule 7.01(a), Plaintiff 526 Murfreesboro, LLC ("526 Murfreesboro") submits this memorandum of law in support of its Motion for a Temporary Restraining Order against Defendant, Prime Capital Ventures, LLC ("Prime Capital"), enjoining and restraining Prime Capital, and any person acting in concert with Prime Capital, from lending or otherwise utilizing the $4,312,500.00 Deposit paid by 526 Murfreesboro, and any funds fairly traceable to the Deposit, until Prime Capital refunds the Deposit.

1

# I. FACTS

Plaintiff 526 Murfreesboro is a limited liability company that invests in real-estate development.[1] Defendant Prime Capital is a limited liability company that bills itself as a "large balance commercial real estate financing company."[2]

Plaintiff was under contract to purchase a 78-unit motel located at 526 Murfreesboro Pike, Nashville, TN 37210 (the "Property"), which required major renovations to make it operable as a hotel/guest suites.[3] On April 6, 2023, 526 Murfreesboro, as borrower, and Prime Capital, as lender, entered into a Development Line of Credit Agreement (the "LOC Agreement") to provide funds for the purchase, renovation, and development of the Property.[4] The loan for the project was $17,250,000.00.[5] The LOC Agreement required that Plaintiff pay Defendant an Interest Credit Account Deposit ("ICA Deposit" or "Deposit") in the amount of $4,312,500.00 "within twenty-four (24) hours after the fully executed Loan Documents are received by [the parties]."[6] Plaintiff paid the ICA Deposit into two specified bank accounts belonging to Defendant: a Key Bank account in Cleveland Ohio, and a Citibank account in Albany, New York.[7]

The LOC Agreement contained only one Lender warranty: "Lender hereby represents and warrants to Borrower that it has the financial ability and wherewithal to fund

---

[1] (*See* Pl.'s Verified Compl. at ¶ 5.)
[2] *See* Prime Capital's website: https://primecommerciallending.com/about-us/
[3] (*See* Pl.'s Verified Compl. at ¶ 13.)
[4] (*See id.* at ¶ 14.)
[5] (*See id.* at ¶ 16.)
[6] (*See id.* at ¶ 17.)
[7] (*See* Decl. of Daniel Cosgrove ("Cosgrove Decl.") at ¶¶ 5, 6.)

the LOC in the full amount of the Maximum Amount."[8] Prime Capital failed to fund the first advance to Plaintiff, and subsequently defaulted on the LOC Agreement.[9] Prime Capital defaulted on the LOC Agreement on August 11, 2023.[10]

The LOC Agreement's Article 13.7, dealing with events of default by the Lender, provides: "[I]f Lender fails to fund the first Advance in accordance with the terms and conditions of this Agreement and the Promissory Note, Borrower shall have the option to terminate this Agreement and request a full refund of the ICA Payment. Upon the occurrence of such default, Borrower shall deliver written notice in the form of a notarized termination letter, a copy of which is attached hereto as Exhibit F (the "Termination Letter"), to Lender by certified mail. Upon receipt of such notice, Lender shall have thirty (30) international business-banking days from the date of receipt ("Refund Period") within which to return the ICA Payment to Borrower."[11]

On September 29, 2023, Plaintiff executed the Termination Letter – as required by the LOC Agreement – and sent it to Prime Capital, terminating the LOC Agreement and requesting the return of the ICA Deposit of $4,312,500.00 within 30 "international business banking days."[12] Thirty international business banking days from September 29th, 2023 was November 10, 2023.[13]

---

[8] (*See* Pl.'s Verified Compl. at ¶ 18; Cosgrove Decl. at ¶ 17.)
[9] (*See* Pl.'s Verified Compl. at ¶¶ 20, 26; Cosgrove Decl. at ¶¶ 8, 11.)
[10] (*See* Pl.'s Verified Compl. at ¶ 26; Cosgrove Decl. at ¶ 11.)
[11] (*See* Pl.'s Verified Compl. at ¶ 19.)
[12] (*See* Pl.'s Verified Compl. at ¶ 28; Cosgrove Decl. at ¶¶ 12, 13.)
[13] (*See* Pl.'s Verified Compl. at ¶ 29; Cosgrove Decl. at ¶ 15.)

On November 10, 2023, undersigned counsel emailed Defendant's counsel requesting a confirmation that the funds would be transferred, and providing the bank account information of Plaintiff's account to facilitate the return of the ICA Deposit.[14] In response, a representative of Prime Capital replied to counsel's email stating as follows: "To All, The client's termination was received on 9/29. 30 banking days is Tuesday, Nov 14th. Not today. Close, but it is on Tuesday. Regards, Kimberly [sic.]"[15] November 14th has come and gone, and still Prime Capital has not returned Plaintiff's ICA Deposit.[16]

Plaintiff seeks a Temporary Restraining Order to enjoin Defendant, or any person or entity acting in concert with Defendant, from lending or otherwise using the ICA Deposit, or any amounts fairly traceable to the ICA Deposit, until the ICA Deposit is returned to Plaintiff. A Temporary Restraining Order is necessary because Plaintiff will not survive without return of the Deposit. While money damages would normally suffice for a case about money, that is not true here because without imminent return of the Deposit Plaintiff will go out of business. Moreover, Prime Capital specifically agreed to return the Deposit no later than November 14, 2023.[17] (526 Murfreesboro believes the Deposit was due by November 10, 2023, but even accepting Prime Capital's calculation the Deposit is well past due). This timing is fundamental to the parties' contract and it is not

---

[14] (*See* Pl.'s Verified Compl. at ¶ 30.)
[15] (*See* Pl.'s Verified Compl. at ¶ 31; Cosgrove Decl. at ¶ 17.)
[16] (*See* Pl.'s Verified Compl. at ¶ 33; Cosgrove Decl. at ¶ 19.)
[17] (*See* Pl.'s Verified Compl. at ¶ 31; Cosgrove Decl. at ¶ 17.)

in dispute. A later return, or an award of damages, cannot replace the contractually-required timing.

## II. STANDARD

A temporary restraining order "is an equitable remedy, the purpose of which is to maintain the relative positions of the parties until proceedings on the merits can be conducted."[18] The entry of a temporary restraining order is within the discretion of the Court: "In determining whether to issue a temporary restraining order pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court is to consider: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the injunction will cause substantial harm to others; and (4) the impact of the injunction on the public interest."[19]

## III. ARGUMENT

A temporary restraining order is appropriate because the four factors favor the Plaintiff's position. First, Plaintiff can show a likelihood of success on the merits on its claims. In fact, the breach of contract claim is all-but undisputed as Defendant has admitted that it is in breach by failing to return the ICA Deposit. Second, Plaintiff will suffer irreparable harm if the injunction is not granted, and such harm will not be adequately remedied at the conclusion of this dispute. Third, granting the injunction will cause no

---

[18] *Garfield v. Middle Tennessee State Univ.*, No. 3:21-CV-00613, 2021 WL 9979155, at *1 (M.D. Tenn. Sept. 1, 2021); *see also Wilson v. Williams*, 961 F.3d 829, 836 (6th Cir. 2020); *Am. Civil Liberties Union Fund of Mich. v. Livingston Cty.*, 796 F.3d 636, 642 (6th Cir. 2015); *Smith v. Li*, 599 F. Supp. 3d 706, 709 (M.D. Tenn. 2022).
[19] *Garfield,* 2021 WL 9979155, at *1 (internal citations omitted).

5

harm to Defendant or other parties – the injunction would require Defendant to return property that it does not rightfully own. Fourth, the injunction would serve the public interest by requiring Defendant to comply with its contractual obligations.

### A. Plaintiff is Likely to Succeed on the Merits of its Claims.

Plaintiff can prove breach of contract. The parties entered into a valid written contract on April 6, 2023.[20] Plaintiff performed its obligations pursuant to the terms of the contract in every material respect. Defendant breached the contract by failing to fund the first installment of the loan.[21] This breach was material. Plaintiff properly notified Defendant of its breach and waited well-over the cure period as specified in the LOC Agreement.[22]

Defendant has never denied that it breached the LOC Agreement. In fact, Defendant has admitted that it is in breach. On November 10, 2023, when Plaintiff's counsel emailed Prime Capital requesting confirmation of return of the ICA Deposit via wire transfer, Kimmy Humphrey of Prime Capital sent an email asserting that "30 banking days is Tuesday November 14th. Not today. Close, but it is on Tuesday."[23] Per the terms of the LOC Agreement, Defendant was required to return Plaintiff's ICA Deposit within "thirty (30) international business banking days."[24] Those thirty (30) days have come and gone, and Defendant has still not returned the ICA Deposit to Plaintiff.

---

[20] (*See* Cosgrove Decl. at ¶ 3.)
[21] (*See id.* at ¶ 8.)
[22] (*See id.* at ¶ 9.)
[23] (*See id.* at ¶ 17.)
[24] (*See id.* at ¶ 14.)

6

### B. Absent a Temporary Restraining Order, Plaintiff will Suffer Irreparable Harm.

A Temporary Restraining Order is needed to safeguard the ICA Deposit funds and secure their timely return. Plaintiff will suffer irreparable harm if the ICA Deposit funds are not returned immediately. Irreparable harm is demonstrated if monetary damages will not be adequate to compensate the injured party.[25]

Economic loss alone is generally insufficient to show irreparable harm; however, "economic loss that threatens the survival of the movant's business can amount to irreparable harm."[26] Plaintiff does not have the financial means to weather the loss of the ICA Deposit funds.[27] Plaintiff had to take out a private loan in order to finance the ICA Deposit.[28] Each day that the ICA Deposit return is delayed, Plaintiff is assessed $1,000.00 in interest under this private loan.[29] This private loan was intended for a short duration of 100 days, and has an annualized interest rate of 23%.[30] The 100-day repayment date on this loan is now long past-due.[31] Plaintiff cannot repay this private loan without the return of the ICA Deposit.[32] Additionally, Plaintiff is facing onerous financial penalties for not repaying this loan within the 100-day timeframe.[33]

---

[25] *Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992).
[26] *Nat'l Min. Ass'n v. Jackson*, 768 F. Supp. 2d 34, 50 (D.D.C. 2011); *see also ConverDyn v. Moniz*, 68 F. Supp. 3d 34, 46 (D.D.C. 2014) ("[M]onetary loss may constitute irreparable harm … where the loss threatens the very existence of the movant's business.").
[27] (*See* Cosgrove Decl. at ¶¶ 2, 23, 25.)
[28] (*See id.* at ¶ 20.)
[29] (*See id.* at ¶ 21.)
[30] (*See id.* at ¶ 22.)
[31] (*See id.*)
[32] (*See id.* at ¶ 23.)
[33] (*See id.* at ¶ 22.)

7

Finally, "economic damages may constitute irreparable harm where no remedy is available at the conclusion of litigation."[34] Prime Capital specifically agreed to return the Deposit no later than November 14, 2023. (526 Murfreesboro believes the Deposit was due by November 10, 2023, but even accepting Prime Capital's calculation the Deposit is well past due). This timing is fundamental to the parties' contract and it is not in dispute. A later return, or an award of damages, cannot replace the contractually-required timing.

### C. Balancing The Equities Favors Plaintiff As There Is No Harm To Others.

When considering the equities, the balance tips heavily in favor of Plaintiff. There is absolutely no potential prejudice to Defendant or third parties from the requested relief. Defendant is currently holding funds that do not belong to it. Injunctive relief will simply require Defendant to return that property to its rightful owner according to the terms of the LOC Agreement. By contrast, the prejudice to Plaintiff absent a temporary restraining order is severe. Every day that Defendant delays in returning the ICA Deposit threatens the existence of 526 Murfreesboro.[35] The requested order is necessary to prevent this harm while the dispute between the parties is being resolved by this Court.

---

[34] *Mountain Valley Pipeline, LLC v. W. Pocahontas Properties Ltd. P'ship*, 918 F.3d 353, 366 (4th Cir. 2019); *see also Regeneron Pharms., Inc. v. United States Dep't of Health & Hum. Servs.*, 510 F. Supp. 3d 29, 39 (S.D.N.Y. 2020) (internal citations omitted) ("Monetary loss alone will generally not amount to irreparable harm ... unless the movant provides evidence of damage that cannot be rectified by financial compensation."); *Borey v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 934 F.2d 30, 34 (2d Cir. 1991) (internal citations omitted) ("A monetary loss will not suffice unless the movant provides evidence of damage that cannot be rectified by financial compensation. Such evidence might include, for example, proof that the monetary loss will probably force the party into bankruptcy. In such a situation, there is more than the risk of mere monetary loss.").

[35] (*See* Cosgrove Decl. at ¶ 25.)

**D. The Public Interest Will be Served By The Order.**

A temporary restraining order "is in the public interest if the public interest would be served by injunctive relief."[36] It is well established that enforcement of contractual obligations is in the public interest,[37] and that public policy favors the enforcement of valid contracts.[38] This temporary restraining order would serve the public interest in that it would prevent Defendant from disregarding its contractual obligations.

## IV. BOND

Plaintiff requests that the Court exercise its discretion in determining the security requirement under Rule 65(c) and either not require a security bond or require the posting of only a nominal bond, $5,000, in this case.[39] No bond or only a nominal bond is appropriate in this case given that Plaintiff is seeking only to prevent Defendant from expending funds that do not belong to Defendant in the first place.

## V. CONCLUSION

Plaintiff requests that the Court issue a temporary restraining order enjoining and restraining Prime Capital, and any person acting in concert with Prime Capital, from

---

[36] *Miller v. Ziegler*, 582 F. Supp. 3d 640, 648 (W.D. Mo. 2022).
[37] *See Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 551 (6th Cir. 2007) (Granting injunctive relief because "[e]nforcement of contractual duties is in the public interest.").
[38] *See Owensboro Specialty Polymers, Inc. v. Daramic, LLC*, No. 4:20-CV-163-JHM, 2020 WL 13577473, at *2 (W.D. Ky. Sept. 25, 2020) (internal citations omitted) ("[C]ontracts voluntarily made between competent persons are not to be set aside lightly ... [and] the usual and most important function of courts is to enforce and maintain contracts....").
[39] *See Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("the district court possesses discretion over whether to require the posting of security").

lending or otherwise utilizing the $4,312,500.00 ICA Deposit paid by 526 Murfreesboro, and any funds fairly traceable to said Deposit, until Prime Capital refunds the Deposit.

Respectfully submitted,

*/s/Michael G. Abelow*
Michael G. Abelow (No. 26710)
Frances W. Perkins (No. 40534)
SHERRARD ROE VOIGT & HARBISON, PLC
150 3rd Avenue South, Suite 1100
Nashville, TN 37201
(615) 742-4532
mabelow@srvhlaw.com
fperkins@srvhlaw.com

*Counsel for 526 Murfreesboro, LLC*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and exact copy of the foregoing will be served via process server and email as indicated on the following:

Kris D. Roglieri
PRIME CAPITAL VENTURES, LLC
66 South Pearl Street, 10th Floor
Albany, NY 12207
kris@primecommerciallending.com

Ned Trombly
BARCLAY DAMON
80 State St.
Albany, NY 12207
(518) 429-4225
ntrombly@barclaydamon.com

*/s/Michael G. Abelow*
Michael G. Abelow
